TWELVE HUNDRED AND NINE QUARTER CASKS OF SHERRY (UNITED STATES v.). See Case No. 14,279.

## Case No. 14,280.

TWELVE HUNDRED AND SIXTY-FIVE VITRIFIED STONE-WARE SEWER PIPES.

[5 Ben. 402; [1] 15 Int. Rev. Rec. 26.]

District Court, S. D. New York. Nov., 1871.[2]

SHIPPING—DELIVERY OF CARGO—BREAKAGE FROM INHERENT DEFECT—TENDER OF FREIGHT.

Stone-ware pipes were shipped on a vessel, under a bill of lading, excepting dangers of the seas and navigation, but containing no exception of loss by breakage. They were in good order when received, were stowed properly and handled carefully in loading and discharging, but some of them came to pieces while being discharged, from the development of cracks existing when the pipes were put on board, or caused while on board by the perils of the sea, the ship having met with bad weather. The consignee tendered the freight on the sound pipes delivered, which was refused, and freight was demanded on the whole, at the rate per ton specified in the bill of lading, and a libel was filed against the goods, to recover the freight. Held, that, as the goods were properly stowed with reference to their character and their apparent condition, the vessel was not liable for the breakage, and was entitled to retain all the goods till the full freight was paid.

In admiralty.

Beebe, Donohue & Cooke, for libellants.

E. Seymour, for claimant.

BLATCHFORD, District Judge. The libel alleges, that in December, 1867, the bark H. L. Routh, owned by the libellants, was lying in the port of Glasgow, in Scotland, bound for the port of New York, and up for general freight, that J. & R. Young shipped on board of her the property libelled in this action, to be transported by her from Glasgow to New York, and delivered at the latter port to William Nelson, Jr., under a bill of lading, a copy of which is annexed to and made part of the libel. The bill of lading recites, that the property is shipped "in good order and well conditioned," and contracts for its delivery "in the like good order and well conditioned," excepting, among other things, dangers of the seas and navigation, the consignee, Nelson, "paying freight for the said goods," at a rate per ton specified in the bill of lading. The libel avers, that the bark, having taken the property on board, and having well and carefully stowed the same, sailed for the port of New York with the same on board, and arrived there safely with the same on board, and discharged the same with notice to the consignee, the same being in as good condition as when received on board, the exceptions in the bill of lading, and the necessary breaking of the goods, from their nature and character, only excepted, and then and there tendered and offered to deliver the same to the consignee on the payment of the freight reserved in the bill of lading, but which he declined and refused to pay; and that the freight due is $886 76.

1 [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]

2 [Reversed in Case No. 10,536.]

The consignee named in the bill of lading is the claimant of the goods. His answer denies that the property safely arrived at the port of New York, and that it was well and carefully stowed, and that whatever damage to it there was was caused by any of the dangers of the seas excepted against in the bill of lading, and that the property was discharged from the vessel in good order and condition within such exceptions, and that it was all of it discharged, and that it was discharged in a proper and careful manner, and that it or any part of it was discharged after notice to the claimant, and that the libellants tendered or offered to deliver it, or any part of it, to the claimant, or to permit him to receive or remove it, or any part of it, on his paying freight therefor, as per the bill of lading, and that he refused to receive it or remove it, or any part of it, or so much of it as could or would be discharged, or as had been discharged on the pier at the time of the notice, or to pay the freight therefor, as per the bill of lading. The answer also avers, that, when the claimant was notified that the bark would discharge the property at pier No. 19, East river, he attended, ready and willing to receive it and pay freight for it, as per the bill of lading, on its discharge, and remove it, but, on arriving there, found that only a small part of it had been discharged and was on the wharf; that, on his attempting to take possession of and remove the same, upon tendering and offering to pay to the libellants the freight for the same, as per bill of lading, and have the freight due on the same ascertained, he tendered and offered to the libellants the money for the payment of said freight, as per bill of lading, ton by ton, which they refused to receive, and they refused to permit him to remove the goods already discharged, although requested, and refused to deliver to him the goods already discharged, or any part of the goods on board of the bark not discharged, or to discharge the same, unless and until he paid the full amount of the freight named in the bill of lading, before the goods were discharged or he could remove the discharged goods; that, thereupon, he offered to secure the libellants for the freight money, and tendered and offered to them the amount of freight named in the bill of lading, on the goods being discharged, which they refused to receive or do; that he then and there tendered and offered to pay to the libellants the freight on the goods already discharged, and also on all of the goods that should be discharged, by the ton, for each and every ton as discharged per the bill of lading, which they refused to receive or do; that they refused to deliver to him the goods, or any part of them, unless and until he first paid the whole freight named in the bill of lading before the goods were discharged; and that, when the libel was filed, all of the goods had not been discharged.

The goods, after being libelled, were bonded in this suit, and delivered to the claimant. It is to be noted, that the answer sets up no recoupment or any damage to or breakage of the goods, and that the bill of lading contains no exception as to loss by breakage, other than such as may be covered by the exception as to the dangers of the seas and navigation. The goods in question were stone-ware pipes and rings of a brittle character, transported loose, and not in boxes or packages, or otherwise protected.

The evidence satisfactorily shows, that the goods were properly stowed; that the vessel met with bad weather on her passage; that the goods were in apparent good order when put on board; that such goods are liable, through transportation in ships at sea, to come out of the vessel broken, through the development of cracks which, in fact, existed in them when put on board, but would not attract notice; that some of the goods in this case came to pieces, when handled in the hold of the vessel, for the purpose of being discharged; that the broken pieces, as well as the unbroken goods, were discharged on the wharf; that the goods were handled properly and with care, in being loaded and discharged; and that none were broken through carelessness in discharging them, although some came to pieces while being moved from the vessel or the wharf to a place of deposit, through the development, as seems probable, either of cracks existing when they were put on board of the vessel, or of cracks caused on board by the perils of the sea. Although there was not in the bill of lading any exception of loss by breakage, yet the vessel is not liable for losses caused by inherent defects in the goods, or by their brittle nature, provided they were in apparent good order when put on board, and were properly stowed with reference to their character and their apparent condition. That was the case here; and, in such case, the consignee must bear the loss, as well as pay the freight, not only on the goods delivered in an unbroken condition, but on all put on board under the bill of lading. Clark v. Barnwell, 12 How. [53 U. S.] 272, 282, 283.

In the present case, the claim on the part of the consignee seems to be that he is not bound to pay freight on any goods except such as were delivered to him in an unbroken condition. That is the meaning of the averments in the answer as to the offer of the claimant to pay freight for the goods, or for the goods discharged, as per the bill of lading, and ton by ton as per the bill of lading, as discharged per the bill of lading. The evidence shows this clearly, and that the whole effort of the claimant was to get the unbroken pipes and rings, and pay freight only on them. He, in fact, never offered to pay freight on the goods as discharged, but his only offer really was to pay freight on unbroken pipes and rings, ton by ton, as they should be discharged unbroken. He sought

to make the vessel insurers, under the bill of lading, against the breakage of the goods on the voyage. On this state of facts, the libellants had a right, having been guilty of no fault or negligence in loading, stowing, transporting or discharging the goods, to retain all the goods until the full freight named in the bill of lading was paid, provided they discharged everything named in the bill of lading. They did that, and, after all the goods had been discharged, and were upon the wharf, awaiting the payment of the freight and their removal by the claimant, the suit was brought. The claimant had full notice of the place and of the fact of the discharge of his goods, and saw some of them on the wharf unbroken, while others were on the wharf at the same time broken, and saw that they were in process of being discharged.

[There must be an order joining the executors of Dunham, who has died since this suit was commenced, as co-libelants with Carey in the place and stead of Dunham.][3]

There must be a decree for the libellants, with costs, for the amount of the freight, computed in the manner prescribed by the bill of lading, namely, £128. 18s. 8d. sterling, converted into United States currency at bankers' rate of exchange on London in New York, at the date of the entry of the vessel at the custom house at New York, on her arrival at New York, on the voyage in question. The amount will be ascertained by a commissioner, on a reference.

[Upon an appeal to the circuit court, this decree was reversed. Case No. 10,536.]

=====

TWELVE THOUSAND THREE HUNDRED AND FORTY-SEVEN BAGS OF SUGAR (UNITED STATES v.). See Cases Nos. 16,555 and 16,556.

TWENTY BARRELS OF DISTILLED SPIRITS (UNITED STATES v.). See Cases Nos. 16,557 and 16,558.

TWENTY CASES OF MATCHES (UNITED STATES v.). See Case No. 16,559.

TWENTY-EIGHT BAGS OF COTTON, PROCEEDS OF (PEABODY v.). See Case No. 10,869.